**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

MICHAEL C.,

                        Plaintiff,

  - v -                                              Civ. No. 3:18-CV-0831
                                                                             (DJS)

ANDREW SAUL, *Comm'r of Soc. Sec.*,[1]

                        Defendant.

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| LACHMAN, GORTON LAW FIRM<br>Counsel for Plaintiff<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY  13761 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GENERAL COUNSEL<br> - REGION II<br>Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | JOSHUA L. KERSHNER, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

## **DECISION AND ORDER**[2]

Currently before the Court, in this Social Security action filed by Michael C. against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.  The Clerk of Court is respectfully directed to amend the caption.

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 6 & General Order 18.

1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 16. Plaintiff has submitted a Reply Brief. Dkt. No. 19. For the reasons set forth below, Plaintiff's Motion is **granted,** Defendant's Motion is **denied**, and the matter is **remanded for further proceedings.**

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 14, 1959. Dkt. No. 10, Admin. Tr. ("Tr."), p. 166. Plaintiff reported completing high school. Tr. at p. 55. He has past work experience as a flagger and a laborer. Tr. at p. 194. Plaintiff alleges disability due to joint disease in both hips, lower lumbar pain, degenerative disc disease, carpal tunnel syndrome in both hands, and degenerative joint disease. Tr. at p. 52.

### B. Procedural History

Plaintiff filed for benefits in 2013, alleging disability beginning November 16, 2010. Tr. at p. 328. Plaintiff was denied benefits, and after holding a hearing, on September 25, 2015, Administrative Law Judge ("ALJ") Elizabeth Koennecke found Plaintiff was not disabled. Tr. at pp. 11-19. After the Appeals Council denied Plaintiff's request for review of the determination, he commenced an action in this Court. Tr. at pp. 328 & 378. Defendant consented to remand, and the matter was sent back for further administrative proceedings. Tr. at pp. 328 & 380-381. In its directive to the ALJ, the Appeals Council noted as follows:

> The hearing decision did not include an adequate evaluation of the opinion evidence. In June 2014, the claimant attended orthopedic and internal

2

> medicine examinations with Justine Magurno, M.D. In her orthopedic report, Dr. Magurno noted that the claimant had marked limitations in lifting, and she completed a medical assessment that found the claimant unable to lift more than 10 pounds. In the hearing decision, the administrative law judge determined that the claimant could occasionally lift 20 pounds. In making this determination, the hearing decision gave some weight to Dr. Magurno's assessment, but erroneously stated that Dr. Magurno found the claimant capable of lifting 20 pounds. As Dr. Magurno's assessment is the only medical opinion in the exhibit file, it is unclear whether the residual functional capacity in the hearing decision is supported by substantial evidence. Moreover, if the claimant were limited to sedentary work due to his inability to lift more than 10 pounds, Medical-Vocational Rule 201.12 would direct the finding of "disabled." Therefore, further evaluation of Dr. Magurno's assessment of the claimant's residual functional capacity is warranted.

Tr. at p. 389 (internal citations omitted).

Plaintiff requested a supplemental hearing, which was held before the ALJ on March 28, 2018. Tr. at pp. 348-356. Plaintiff submitted additional evidence for consideration. Tr. at p. 329. On April 30, 2018, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. Tr. at pp. 328-343. Plaintiff did not appeal the ALJ's decision to the Appeals Council and the ALJ's determination became the final decision of the Commissioner on the sixty-first day after the date of the determination. *See* 20 C.F.R. § 404.984(d). Plaintiff then commenced this action appealing the determination on July 13, 2018. Dkt. No. 1.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2012. Tr. at p. 331. The ALJ next found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of

3

November 16, 2010 through his date last insured of June 30, 2012. *Id.* The ALJ found that through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease in the hips, right Achilles tendinopathy, and obesity. *Id.* The ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at p. 332-333. The ALJ next determined that through the date last insured Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

- Lift and/or carry ten pounds frequently;
- carry twenty pounds occasionally;
- lift twenty pounds occasionally from waist level, but should not lift twenty pounds from below the waist;
- stand for six hours in an eight-hour day;
- walk for six hours in an eight-hour day;
- sit for six hours in an eight-hour day;
- continuously reach, handle, and finger; and
- occasionally stoop, kneel, crouch, and crawl.

Tr. at p. 333.

Next, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. at p. 341. The ALJ found that Plaintiff was born on June 14, 1959 and was 53 years old on the date last insured, has at least a high school education and is able to communicate in English. Tr. at pp. 341-342. The ALJ found that transferability of job skills is not material to the determination of disability because Plaintiff's past relevant work was unskilled. Tr. at p. 342. The ALJ then determined that,

through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff was not under a disability as that term is defined by the Social Security Act, at any time from the alleged onset date through the date last insured. Tr. at pp. 342-343.

### D. The Parties' Briefings on Their Cross-Motions

In his brief, Plaintiff contends that the ALJ improperly substituted her lay opinion for the undisputed medical opinion of record and formed the RFC without a supporting medical opinion. Dkt. No. 11, Pl.'s Mem. of Law, pp. 7-15. In particular, he claims that the ALJ ignored the conclusions of Dr. Hoda[3] and Dr. Magurno that Plaintiff could not meet the exertional demands of sedentary work on a regular and continuing basis because he could not stand or sit for the required period. *Id.* Plaintiff contends the ALJ's rejection of these opinions and her formation of the RFC were based on her own lay interpretation of bare medical findings, which constitutes legal error. *Id.* at pp. 9-14.

Plaintiff also contends that the ALJ's Step Five determination is not supported by substantial evidence because the hypothetical the ALJ gave to the vocational expert ("VE") utilized the ALJ's RFC, and therefore did not incorporate the full extent of Plaintiff's impairments. *Id.* at p. 16. Finally, Plaintiff argues that he is disabled under the grids. *Id.* at pp. 15-16.

---

[3] The Court agrees with the ALJ that the opinions of Dr. Hoda, by their own terms, did not apply to the period of disability applicable in this case, but rather were limited to the period from January 2017 to 2018, and had little evidentiary value as to Plaintiff's condition as of 2012, his date last insured. Tr. at pp. 338 & 563.

5

In response, Defendant contends that the ALJ appropriately considered the medical opinions, considering their consistency with the evidence of record, and contends that the ALJ sufficiently explained her rationale for her determinations, citing to evidence that supports the ALJ's determination. Dkt. No. 16, Def.'s Mem. of Law, pp. 5-13. Defendant contends the ALJ weighed the medical opinions and considered the evidence of record as a whole, including Plaintiff's medical records, physician statements, and Plaintiff's description of his limitations, in accordance with the regulations. *Id.* Finally, Defendant contends that, because the ALJ's RFC was supported by substantial evidence, she properly relied on the VE testimony to carry the Commissioner's burden of proof at Step Five. *Id.* at p. 13.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d

Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential

7

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

The heart of this appeal boils down to the ALJ's treatment of the two consultative examination reports issued by Dr. Magurno on June 24, 2014. Plaintiff was seen by Dr. Magurno at her Binghamton office for an orthopedic examination at the request of the Division for Disability Determination. Tr. at p. 296. An internal examination was also

done on that date, which resulted in a separate report.[4] As to the orthopedic exam, Dr. Magurno references osteoarthritis, degenerative disc disease and joint disease. The report notes certain pain levels, points out that the pain is of a constant stabbing nature, and that it is worse when, among other things, Plaintiff walks or sits for too long. Tr. at p. 296. The medical source statement in the Report states as follows:

> He should avoid heights and ladders, due to history of give way and falls, due to his hip arthritis. He has marked limitations for squatting, bending, and lifting. He has moderate to marked limitations for neck motion. He has moderate limitations for carrying, pushing, and pulling. He has mild limitations for reaching and fine motor skills.

Tr. at p. 299.

Dr. Magurno also filled out a questionnaire regarding Plaintiff's ability to do work related activities, and limited him to lifting no more than ten pounds on a continuous basis, and to carrying ten pounds continuously and up to twenty pounds occasionally. Tr. at p. 301. Regarding limitations for standing/sitting/walking, Dr. Magurno indicated that Plaintiff was restricted to thirty minutes of standing, sitting, and walking at one time period, and for a total of no more than three hours standing, three hours walking, and four hours sitting, during the work day. Tr. at p. 302. Additional limitations were found regarding Plaintiff's hands, feet, and posture. Tr. at pp. 303-304.

Dr. Magurno's internal examination dealt with Plaintiff's complaints of carpal tunnel syndrome, vertigo, and incontinence. Tr. at p. 282. The medical source statement filled out after this internal examination appears, at first blush, to be inconsistent with the

---

[4] It is not clear which exam was performed first, but as the internal examination report refers to the orthopedic examination report, Tr. at p. 283, it appears that the orthopedic examination occurred first.

results of the prior examination. For example, this report has Plaintiff being able to lift and carry objects up to twenty pounds continuously. Tr. at p. 287. More significantly, the internal examination report indicates that Plaintiff can sit, stand, and walk eight hours per day, and for a total of eight hours at one time. Tr. at p. 288.

The ALJ treated these assessments as the functional equivalent of different findings by different doctors, and then set about to determine which of the competing views was most supported by the evidence in the record. Tr. at pp. 338-341. The ALJ concludes: "in terms of supportability, Dr. Magurno's opinion that the claimant is able to sit for eight hours, stand for eight hours, and walk for eight hours is better supported than her more restrictive opinion." Tr. at p. 341.

Plaintiff's counsel, on the other hand, argues that the two assessments are not necessarily conflicting. He suggests that the assessed limitations (or lack thereof) on standing/sitting/walking for the internal examination relate *only* to the conditions that were the subject of that examination, *i.e.*, the carpal tunnel syndrome, vertigo and incontinence. Pl.'s Mem. of Law at p. 11. Pursuant to that reading, the more restrictive assessment (no more than thirty minutes standing, sitting, or walking at one time) contained in the orthopedic examination was a result of the conditions referenced therein (the arthritis and disc disease) and therefore better accounts for Plaintiff's limitations. *Id.*

Trying to reconcile competing medical assessments is often a difficult task, but it is quite possible in this case that there is an explanation for the differences in the two reports prepared by the same doctor on the same day. While the ALJ considered asking for an explanation from Dr. Magurno, she ultimately rejected that approach on the

grounds that any explanation or clarification would be neither "persuasive or valuable" given the lapse in time since the reports were issued. Tr. at p. 339. This Court respectfully disagrees.

It is well-settled that the ALJ has an "affirmative duty to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). A specific rule applies to reviewing reports of consultative examinations which states that "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). That was obviously not done in this case, and the matter is significant because, as noted by the Appeals Council in the previous remand on this very case, the consultative examination, as the only medical opinion in the record, was critical to the determination of disability. Nor does the Court find that the time lapse between when the report was prepared and any present request for clarification would necessarily render that information futile. It is possible that the doctor could read the two reports that were prepared the same day, and provide an explanation for the difference. The ALJ's predetermination that such an explanation would not be persuasive is troubling, as such a conclusion is difficult to make prior to even receiving an explanation.

This point also affects the ruling on Plaintiff's further contention that the ALJ committed error by improperly substituting her lay opinion for the medical opinion of record and forming the RFC without a supporting medical opinion. Pl.'s Mem. of Law, *generally*. "[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or

11

to choose between properly submitted medical opinions, [s]he is not free to set [her] own expertise against that of a physician who [submitted an opinion to or] testified before [her]." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted) (citations omitted). Plaintiff's counsel's argument regarding the correctness of the ALJ's RFC is, and must be, secondary to a determination as to what actually was the medical opinion of Dr. Magurno. Are the two opinions meant to be reconciled and read collectively, rather than contradictorily? By considering the two reports issued by the same doctor on the same day as wholly separate opinions, at least as with regard to the ability to stand, sit, and walk, the ALJ was able to point to one of the medical opinions as a justification for her determination. But if, in fact, the opinion relied upon (that the claimant can stand, walk, and sit, for eight hours at a time) is not in fact the actual or complete opinion of the medical source, but was meant to be modified by the more restrictive orthopedic evaluation, then the ALJ's analysis fails. Since Dr. Magurno was the only medical source relied upon, this scenario would mean that the ALJ was making her own medical determinations, contrary to established legal precedent. The record and the ALJ's determination leave this question entirely unclear.

In light of the foregoing, the matter is remanded to Defendant to seek a clarification or a further report from Dr. Magurno regarding the consultative examinations performed in June 2014, and in light of her response, to re-assess the RFC. The Court notes that it may be necessary for Defendant to re-evaluate the Step Five determination after re-evaluating the RFC.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: September 9, 2019
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge